IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DEBORAH ELAINE JOHANINGMEIER, | Case No.: 3:16-CV-02027-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Deborah Elaine Johaningmeier ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). Because the Commissioner's decision is supported by substantial evidence, his decision is AFFIRMED and this case DISMISSED.

*Procedural Background*

Plaintiff protectively filed her application for DIB on October 17, 2012, alleging disability as of January 1, 2010. (Tr. 22, 211-15.) The Commissioner denied her application initially and upon

Page 1 - OPINION AND ORDER

reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 91-102, 103-13, 126-27.) An administrative hearing was held on December 22, 2014. (Tr. 37-78). A supplemental hearing was held on June 1, 2015. (Tr. 79-90.) After the hearings, the ALJ issued an unfavorable decision on June 10, 2015, finding plaintiff not disabled. (Tr. 19-36.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-7.)

*Factual Background*

Born on August 27, 1956, plaintiff was 53 years old on the alleged onset date of disability and 58 years old at the time of the initial hearing. (Tr. 42, 92, 103.) She speaks English, completed a year of college, and vocational college for phlebotomy. (Tr. 42-43, 227, 229.) Plaintiff alleges disability due to migraines, insomnia, depression, interstitial cystitis, high blood pressure, arthritis, ischemic colitis, asthma, and hypothyroidism. (Tr. 49-51, 92, 103.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*,

782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.[1] First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520©. If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or

---

[1] Effective March 27, 2017, updates were made to the regulations and some sections of the regulations were renumbered. The C.F.R. sections referenced throughout this opinion are the versions of the C.F.R. in effect at the time plaintiff requested judicial review.

Page 3 - OPINION AND ORDER

local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

The ALJ performed the sequential analysis. At step one of the five-step process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (Tr. 24.) At step two, the ALJ concluded that plaintiff had the following severe impairments: interstitial cystitis,[2] osteoarthritis of the bilateral knees, mild left shoulder rotator cuff tendonitis, and mild degenerative disc disease. (Tr. 24-25.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 25.)

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to

> perform less than the full range of light work as defined in 20 CFR 404.1567(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently and can stand and/or walk 6 of 8 hours. She can occasionally climb and frequently stoop, kneel and crouch. She should not be required to engage in overhead reaching with the left upper extremity on more than an occasional basis.

(Tr. 25-30.)

At step four, the ALJ found that plaintiff could perform her past relevant work as a phlebotomist. (Tr. 30.) The ALJ therefore concluded plaintiff was not disabled. (*Id.*) The ALJ did not proceed to step five of the sequential evaluation process.

---

[2] Cystitis is "the medical term for inflammation of the bladder. Most of the time, the inflammation is caused by a bacterial infection, and it's called a urinary tract infection (UTI)". Mayo Clinic,
http://www.mayoclinic.org/diseases-conditions/cystitis/basics/definition/con-20024076.

Page 4 - OPINION AND ORDER

*Discussion*

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the medical opinion evidence of Dr. John Ellison and Dr. Christopher Tongue, and (2) failing to properly consider her subjective symptom testimony. (Pl.'s Opening Br. 5-28, Pl.'s Reply Br. 1-5.)

I. Medical Opinion Evidence.

First, plaintiff argues that the ALJ erred by improperly evaluating the medical opinions of John Ellison, M.D., and Christopher Tongue, Ph.D. (Pl.'s Opening Br. 5-23, Pl.'s Reply Br. 1-5.)

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

*A.    Examining Physician, John H. Ellison, M.D.*

Plaintiff argues that the ALJ erred by failing to provide a legally sufficient reason for discrediting the medical opinion evidence of Dr. John Ellison. (Pl.'s Opening Br. 7-16.) Specifically, plaintiff argues that if Dr. Ellison's opinion were properly credited, she would be limited to the performance of sedentary work, and would be unable to perform her past relevant work as a phlebotomist, which is performed at the light level. (Pl.'s Opening Br. 8.)

Dr. Ellison evaluated plaintiff on two separation occasions. First, on January 31, 2015, Dr. Ellison conducted a consultative examination. (Tr. 1078-80.) Upon examination, Dr. Ellison diagnosed plaintiff with "[c]hronic low back pain with relatively benign exam," "[c]hronic left knee pain with benign exam," "[c]hronic neck pain and stiffness status post anterior fusion, 2004,"

hypertension, incompletely controlled; asthma, chronic depression and insomnia, somatization, secondary gain; and obesity. (Tr. 1080.)

Second, on February 5, 2015, Dr. Ellison completed a Medical Source Statement of Ability to Do Work Related Activities (Physical). (Tr. 1081-86.) Dr. Ellison wrote that plaintiff could frequently lift up to ten pounds, could occasionally lift up to twenty pounds, and could occasionally carry ten pounds. (Tr. 1081.) Dr. Ellison wrote that these limitations were related to plaintiff's chronic depression, chronic low back pain, chronic neck pain, chronic pain in other joints, hypertension, asthma, and obesity. (*Id.*) He found that plaintiff could sit for two hours, stand for one hour, and sit for fifteen minutes at one time. (Tr. 1082.) In an eight-hour workday, she could sit for eight hours, stand for three hours, and walk for one hour. (*Id.*) She was able to frequently use her right hand for reaching, handling, fingering, feeling, pushing, and pulling, but could only occasionally handle, finger, feel, push, and pull with her left hand, and could never reach with her left hand. (Tr. 1083.) Dr. Ellison wrote that plaintiff should avoid unprotected heights, moving mechanical parts, operation of motor vehicles, pulmonary irritants, and temperature extremes. (Tr. 1085.) Finally, he wrote that plaintiff could tolerate only occasional exposure to humidity, wetness, and vibrations. (*Id.*)

The ALJ was required to give a specific and legitimate reason to discredit Dr. Ellison's medical opinion because it was inconsistent with the opinion of Dr. Richard Alley, who found plaintiff could sit and stand six hours in an eight-hour workday, and had no manipulative limitations. (Tr. 98; *see also Bayliss*, 427 F.3d at 1216 (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence).) Here, the ALJ gave "some weight" to the opinion of Dr. Ellison, finding that his

Page 6 - OPINION AND ORDER

opinions were "not fully supported by the medical evidence of record." (Tr. 28.) The ALJ found there was "no evidence" to support Dr. Ellison's standing and walking limitations, and that he provided "no basis for this assessment." (*Id.*) The ALJ also found that although evidence supports Dr. Ellison's "overheard reaching" limitations for the left arm, the record "does not support other manipulative restrictions." (*Id.*) "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. §§ 404.1527(d)(3).

On this record, it was reasonable for the ALJ to give Dr. Ellison's medical opinion only some weight. As the ALJ noted, the record shows plaintiff reported left knee pain, but had relief with knee injections and icing her knee after injections. (*See tr.* 346.) Indeed, an independent review of the record shows x-rays of plaintiff's left knee from December 2014 which revealed only "mild age-appropriate osteoarthritic change" in plaintiff's knee, and "no significant bone, joint space or soft tissue abnormalities." (Tr. 1284.) With respect to plaintiff's right knee, the ALJ reasonably noted that despite reported knee pain in her right knee, a March 2014 x-ray showed only "mild osteoarthritic spurring." (*See tr.* 897, 1070.) Additionally, the ALJ finding's of the plaintiff's manipulative restrictions are supported by an independent review of the evidence supports the ALJ's finding that the record "does not support other manipulative restrictions."

Plaintiff argues that Dr. Ellison's medical opinion is "generally preferred by the Agency," because he was the only examining physician and he has a medical specialty as an internist, both of which require his opinion to receive more weight. (Pl.'s Opening Br. 9-10, citing 20 C.F.R. §§ 404.1527(c)(1), (c)(5).) However, "the ALJ is the final arbiter with respect to resolving ambiguities

Page 7 - OPINION AND ORDER

in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Here, the ALJ reasonably evaluated the medical opinion evidence when discrediting Dr. Ellison's opinion. While different interpretations of the evidence may exist, the ALJ's analysis here was nonetheless reasonable and, thus, must be upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). There is no error.

### B. Examining Physician, Christopher K. Tongue, Ph.D.

Next, plaintiff argues that the ALJ erred by improperly evaluating the medical opinion evidence of Dr. Christopher Tongue. (Pl.'s Opening Br. 17-23, Pl.'s Reply Br. 1-4.) Specifically, plaintiff argues that the ALJ erred by relying on his own opinion instead of the opinion of the medical examiner, Dr. Tongue. (Pl.'s Opening Br. 23.)

On February 4, 2015, Dr. Tongue performed a psychodiagnostic examination of plaintiff. (Tr. 1088-92.) Upon examination, Dr. Tongue wrote that plaintiff's "mental status appears normal and she shows no evidence of any cognitive impairment." (Tr. 1091.) He found plaintiff had "no impairment in her ability to understand and remember simple instructions or carry them out or make judgments on simple work-related decisions." (*Id.*) He also found that plaintiff is moderately impaired in her ability to understand and remember complex instructions, mildly impaired in her ability to make judgments on complex work-related decisions, and would be mildly impaired in her ability to interact appropriately with supervisors, co-workers, and the public. (Tr. 1091-92.) Overall, Dr. Tongue diagnosed plaintiff with "[m]ajor depression recurrent, moderate without psychotic features," "[g]eneralized anxiety disorder," "[f]amily relational stress" and "[f]eatures of dramatic spectrum disturbance of personality functioning." (Tr. 1092.)

A little more than a week later, on February 12, 2015, Dr. Tongue completed a "Medical

Source Statement of Ability to Do Work-Related Activities (Mental)" form on plaintiff's behalf. (Tr. 1093-95.) Dr. Tongue wrote that plaintiff had mild limitations in making simple work-related decisions, and mild limitations in understanding, remembering, and carrying out complex instructions. (Tr. 1093.) He found plaintiff would have moderate limitations in her "ability to make judgements on complex work-related decisions." (*Id.*) Finally, Dr. Tongue wrote that plaintiff would have mild limitations in interacting appropriately with the public, moderate limitations in interacting appropriately with co-workers, and marked limitations in interacting appropriately with supervisors. (Tr. 1094.)

Dr. Tongue's medical opinion conflicts with the opinion of Dr. Joshua Boyd, who found plaintiff had only mild mental health limitations; consequently, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Tongue's medical opinion. (*See* tr. 96-97; *see also Bayliss*, 427 F.3d at 1216.) Here, the ALJ gave Dr. Tongue's opinion "limited weight." (Tr. 30.) The ALJ found there was "no basis" for Dr. Tongue's opinion that plaintiff had "marked limitations in the ability to interact with supervisors," and that Dr. Tongue's narrative and medical source statement were "contradictory." (*Id.*) The ALJ also found that Dr. Tongue's findings regarding plaintiff's symptoms interfering with her ability to maintain concentration, persistence, and pace were speculative. (*Id.*) Finally, the ALJ noted that "[t]here was no evidence of mental symptoms of a severity to cause vocational limitations for 12 months or more" and "[g]eneralized anxiety disorder has not been diagnosed by a treating source." (*Id.*) An ALJ may find inconsistency between a doctor's chart notes and the doctor's ultimate opinion a valid reason to reject their opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted). Here, the ALJ reasonably discounted Dr. Tongue's medical opinion after finding his opinions were inconsistent.

Although plaintiff disagrees with the ALJ's findings, this court finds the ALJ's findings are reasonable and supported by substantial evidence. There is no error.

II.     Plaintiff's Subjective Symptom Testimony.

Plaintiff also contends the ALJ failed to properly consider her subjective symptom testimony. (Pl.'s Opening Br. 23-28, Pl.'s Reply Br. 1-2.) Specifically, plaintiff argues that the ALJ erred when assessing her subjective symptom testimony because the ALJ failed to consider her "strong work history." (Pl.'s Opening Br. 23, citing 20 C.F.R. § 404.1529(c)(3); SSR 96-8p; SSR 96-7p.)

The regulations describe a two-step process for evaluating symptom testimony. The adjudicator must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce symptoms, including pain. 20 C.F.R. §§ 404.1529(a) & (c)(1); SSR 16-3p, at *2. Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, the adjudicator must consider the intensity, persistence, and limiting effects of the alleged symptoms based on examination of the entire record, including a number of factors. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, at *7.[3] If "there is no affirmative evidence of malingering, 'the ALJ can reject the

---

[3] The factors the ALJ must consider under 20 C.F.R. §§ 404.1529(c)(1)-(3) include the following:
a. Objective medical evidence (signs and clinical/laboratory findings);
b. Other evidence (written or spoken testimonial statements): The SSA "will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms." SSR 16-3p. The SSA will consider the following factors that are reported by the claimant, any medical sources (acceptable medical sources and non-acceptable medical sources), and any non-medical sources (lay witnesses):
i. Daily activities;
ii. Location, duration, frequency, and intensity of pain or other symptoms;
iii. Factors that precipitate and aggravate the symptoms;
iv. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

Page 10 - OPINION AND ORDER

claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects of [her] symptoms [were] not credible." (Tr. 27.) The ALJ cited numerous reasons for discrediting plaintiff's subjective symptom testimony, including: (1) that plaintiff left her previous

---

v. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
vi. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
vii. Any other factors concerning a claimant's functional limitations and restrictions due to pain and other symptoms.

Page 11 - OPINION AND ORDER

employment for reasons other than her disability; (2) that plaintiff received unemployment benefits after her job ended; (3) that her pain allegations were not consistent with her activities of daily living; and (4) there was a lack of medical evidence for her pain allegations. (Tr. 27-29.)

Plaintiff argues that her lengthy work history should have been considered in the ALJ's credibility determination, and the ALJ's failure to include her work history was a harmful error. (Pl.'s Opening Br. 23-28.) However, the Commissioner argues, and this court agrees, any error in failing to consider her work history when evaluating her subjective symptom testimony is harmless because the ALJ provided at least one other clear and convincing reason, supported by substantial evidence, to discredit her subjective symptom testimony. (Def.'s Opening Br. 2-3; *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.")). Because plaintiff raises the additional argument that the ALJ's remaining reasons for discrediting plaintiff's subjective symptom testimony were not clear and convincing, this court now considers the ALJ's other reasons for discrediting plaintiff's subjective symptom testimony.

*A.     Leaving her job for reasons other than her disability.*

First, the ALJ discredited plaintiff after finding she left her previous employment for reasons other than her disability, noting that plaintiff's job ended because her employer was downsizing and not because of her impairments. (Tr. 27.) The ALJ also noted that although plaintiff testified to having "difficulties at the time she was laid off, there is little medical evidence pertaining to this timeframe." (*Id.*) A plaintiff's subjective symptom testimony can be discredited if she left her job for reasons other than her impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's pain complaints found not credible because he reported at the administrative hearing, and

Page 12 - OPINION AND ORDER

also to his doctors, that he left his job because he was laid off, not because he was injured). An independent review of the record shows that plaintiff lost her job due to a combination of her employer downsizing and to undergo foot surgery. (Tr. 44-46.) Because plaintiff explained that her reasons for being laid off were related to her medical impairments, this was not a clear and convincing reason supported by substantial evidence to discredit plaintiff's subjective symptom testimony. However, even if not all of the ALJ's findings for discrediting symptom allegations are upheld, the overall decision may still be upheld if the ALJ provided other valid rationales. *Batson*, 359 F.3d at 1197. Here, the ALJ provided other clear and convincing reasons to discredit plaintiff's subjective symptom testimony, so there is no error.

  B.  *Receiving unemployment benefits for two years after her job ended.*

The ALJ also discredited plaintiff's subjective symptom testimony after finding that she received unemployment benefits for two years after her job ended, and had looked for work. (Tr. 27.) Continued receipt of unemployment benefits can cast doubt on a claim of disability as it shows that claimant holds herself out as capable of working. *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). Indeed, although plaintiff testified that she was unable to find a job and that even if she found a job, she would not have been able to perform a part-time phlebotomist job, the ALJ's finding that she received unemployment for two years, which requires her to hold herself out as able to work, is a clear and convincing reason to discredit her subjective symptom testimony is reasonable. (*See* tr. 47-48.) There is no error.

  C.  *Inconsistencies between plaintiff's testimony and Activities of Daily Living.*

Next, the ALJ found plaintiff's allegations of debilitating symptoms not consistent with her Activities of Daily Living ("ADLs") and job search activities. (Tr. 27.) A plaintiff's ADLs support

Page 13 - OPINION AND ORDER

an adverse symptom evaluation where the activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted that plaintiff had a good response to a TENS unit and was able to perform "essentially normal activities," and that she received assistance from her husband only on "harder household chores." (Tr. 27.) Indeed, an independent review of the record shows plaintiff was able to drive, do some cooking, perform some cleaning, and take care of her young granddaughter. (*See* tr. 68-71, 240-42.) Additionally, plaintiff would have participated in job search activities, as the ALJ noted, which were required for her to continue receiving unemployment benefits. (Tr. 27.) This was a second clear and convincing reason for the ALJ to discredit plaintiff's subjective symptom testimony.

D.   *Lack of medical evidence.*

Finally, the ALJ discredited plaintiff's testimony because her complaints of debilitating symptoms were not supported by the "minimal and sporadic" treatment she received, and because of her good response to treatment such as a TENS unit. (Tr. 27.) "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2004). The ALJ also noted that plaintiff's x-rays showed only "minimal arthritis" in her left knee; that she had marked thinning in her patellofemoral cartilage, but no ligament tear; had minimal osteoarthritic spurring in her right knee; and only "mild joint effusion at the left knee." (Tr. 27, citing tr. 343, 407, 804-05, 1070.)

Additionally, the ALJ found plaintiff's statements concerning the severity of her interstitial cystitis not credible because treatment records did not support her "allegations concerning the frequency and severity of her interstitial cystitis symptoms." (Tr. 28.) Specifically, the ALJ noted

that plaintiff had experienced urinary incontinence in the past, that she also stated her bladder pain had improved in 2014, and that although she still experienced urinary frequency she no longer had urgency or incontinence. (Tr. 28-29, citing tr. 787, 792, 810, 845.)

Overall, the ALJ's findings are supported by substantial evidence in the record. Although plaintiff requests a different interpretation of the evidence, if the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). This court finds no error.

*Conclusion*

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of January 2018.

JOHN V. ACOSTA
United States Magistrate Judge